## UNITED STATES v. WEYMANN.
### No. 8630.

Circuit Court of Appeals, Third Circuit.
Argued May 15, 1944.

Decided June 16, 1944.

William A. Gray, of Philadelphia, Pa. (Paul C. Van Dyke, of Philadelphia, Pa., on the brief), for appellant.

Thomas J. Curtin, of Philadelphia, Pa. (Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., on the brief), for appellee.

Before DOBIE and McLAUGHLIN, Circuit Judges, and KALODNER, District Judge.

DOBIE, Circuit Judge.

Joseph E. Weymann (hereinafter called Weymann) was tried, found guilty and sentenced, in the District Court of the United States for the Eastern District of Pennsylvania, for a violation of Section 4(a) of the Emergency Price Control Act of 1942, January 30, 1942, c. 26, Title 1, Section 4, 56 Stat. 28, 50 U.S.C.A.Appendix, § 904. The relevant part of this Act provides:

"It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity * * * in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

A jury was waived and there is little or no dispute concerning the basic facts in the case. We need, on this appeal of Weymann, discuss only a single question: Was there sufficient evidence to support the finding of the District Court (which is here legally equivalent to the verdict of a jury) of Weymann's guilt? We think there was.

Weymann was a manufacturer of burlap and cotton bags in Philadelphia and, prior to the transactions herein discussed, had never engaged in the buying or selling of oranges. He had, however, sold bags for many years to orange growers in Florida. Weymann had particularly cordial relations with the Clark Fruit Company (hereinafter called Clark) of Florida, by virtue of the fact that Weymann had sold bags to Clark at less than the ceiling price for bags.

There was a rather acute shortage of oranges in May, 1943, and fruit dealers in the North had no little difficulty in securing them. Freeman (of the firm of Freeman and Chezik, orange dealers in Philadelphia) met Weymann on the street in Philadelphia and the scarcity of oranges was discussed. According to Weymann's testimony: "He (Freeman) asked me if I could get him any oranges." Later Weymann "called (on the long-distance telephone) the Clark Fruit Company and at that time he (Clark) told me he might possibly *get me* some oranges if I came to Jacksonville. I spoke to Mr. Freeman about it, and I told Mr. Freeman if I go down it would cost him $500.00 a car if I could get these oranges for him." (Italics ours.) No mention whatever of Freeman and Chezik was made in this

telephone conversation between Weymann and Clark.

Weymann went to Florida, negotiated with Clark, and twenty carloads of oranges were, under Weymann's directions, shipped by Clark to Freeman and Chezik in Philadelphia. As each carload was shipped, Weymann notified Freeman and Chezik, who sent certified checks to Weymann, payable to his order. Some of these checks were for an amount equal to the ceiling price of the oranges, f.o.b. Florida, $3.33 per box. When that was so Weymann would endorse the check to Clark. In other instances when the checks were in excess of ceiling price as charged by Clark they were cashed by Weymann and he would then pay Clark the ceiling price in cash. On three occasions Freeman and Chezik sent Weymann checks in the flat amount of $500 and on two occasions checks for $1,000. Weymann concedes that the net effect of the payments by all these certified checks was that they equalled $3.33 per box for the contents of each car (paid to Clark) plus $500 (paid to Weymann) per car.

While these transactions were being consummated, Clark kept a running account with Weymann, while Freeman and Chezik also kept a running account with Weymann. No accounts whatever were kept between Clark and Freeman and Chezik. Clark looked to Weymann, and to Weymann alone, for payment. No credit was extended by Clark to Freeman and Chezik. Clark's invoices were made out to Weymann. The Government introduced one of these in evidence—a printed bill-head of Clark, upon which, following the printed words "Sold to", was written: "J. E. Weymann".

Weymann strenuously contends that he did not violate, and could not have violated, the Emergency Price Control Act of 1942, because, in all the transactions in question, he acted solely as the agent of Freeman and Chezik. Accordingly, he insists, he never acquired any title to the oranges, and he never "sold", "delivered", "bought" or "received" the oranges in violation of any maximum price regulation. The sum of $500 per carload of oranges (amounting in all to $10,000 on the 20 carloads) was, we are told, received by him solely as the commission of an agent, or the fee of a broker, acting not for himself but entirely for his principal—here Freeman and Chezik.

The findings of Judge Bard, in the District Court, were:

"Now, it seems to me there are two principal questions to be determined here. The first is from whom did Freeman and Chezik purchase the oranges, and secondly, whom did they pay and how much did they pay for the oranges.

"Now, on the first question the evidence, it seems to me, shows that the only person with whom Freeman and Chezik dealt was the defendant, Joseph E. Weymann; therefore, I conclude that the evidence shows that Freeman and Chezik purchased the oranges from the defendant Weymann.

"Now, the second question, whom did they pay and how much did they pay for the oranges, the evidence is that Freeman and Chezik paid the defendant, Weymann, for these oranges, and the evidence is that they paid $3.33 a box plus $500.00 for each and every carload, and that this was paid as a result of a conversation, or an oral agreement between Mr. Freeman and the defendant Weymann. Therefore, I find that the defendant is guilty of the offense with which he is charged."

And we think there is in the record substantial evidence, strong enough to support this finding, and to justify us in affirming the judgment below.

The brief of counsel for Weymann sets out six "salient facts" which, we are told, show clearly "that the relation that existed between Freeman and Chezik, and defendant (Weymann) falls squarely within the legal concept of agency." These "salient facts" are:

"(1) The agreement was entered into at the invitation of Freeman, partner in the firm of Freeman and Chezik.

"(2) Defendant has never been engaged in the business of buying and selling oranges.

"(3) Freeman gave to the defendant a check for $500.00 whereon was specified 'travelling expenses'.

"(4) The Clark Fruit Company did not know Freeman and Chezik and were unwilling to extend them credit.

"(5) The expressed mutual intent of the parties irrefutably points to an agency agreement.

"(6) Freeman and Chezik accepted the benefit of defendant's services."

Even if the salient facts numbered 1, 2, 3, 4 and 6 be true, we cannot attribute to them the force and effect stressed by counsel. As to number 5, we might point out that no agency contract between Weymann

and Freeman and Chezik was introduced in evidence. There was some testimony as to a letter given by Freeman and Chezik to Weymann, indicating (it is alleged) that Weymann was authorized to purchase oranges in Florida as the agent of Freeman and Chezik. But there was no evidence in the record to show that this letter, or any document of similar import, was ever shown to Clark by Weymann.

Weymann stresses the fact that the oranges were shipped by Clark to Freeman and Chezik f.o.b. Florida. If this were a case involving only the passage of title as between buyer and seller, with no third person involved, that fact would tend strongly to show that title to the oranges passed to the buyer upon delivery to the carrier. In the instant case, however, we think this fact has only slight probative force. The case of the Government against Weymann is predicated upon the theory that title to the oranges passed from Clark to Weymann, and then from Weymann to Freeman and Chezik when the oranges were shipped by Clark in pursuance of Weymann's directions to Clark.

Two cases, upon which Weymann's counsel strongly rely, call for at least some comment on our part. Bowles, Price Administrator, v. Inland Empire Dairy Association, D.C., 53 F.Supp. 210; State of North Carolina v. Colonial Club, 154 N.C. 177, 69 S.E. 771, 31 L.R.A.,N.S., 387, Ann. Cas.1912A, 1079. Neither of these cases— one decided by a federal District Court and one by the Supreme Court of North Carolina—is, of course, a binding authority upon us. And in the Colonial Club case, there were strong dissenting opinions filed by Chief Justice Clark and Associate Justice Hoke.

The Inland Dairy Empire case, supra, involved a cooperative association and the whole background of the case showed clearly that the association acted as the agent of its patrons in selling their products to ultimate consumers. Judge Schwellenbach's opinion demonstrates this quite conclusively.

More closely in point is the Colonial Club case, supra. The facts and decision are thus set out in headnote 3, 69 S.E. 771:

"Defendant, an incorporated club, located in prohibition territory, charged its members an initiation fee of $10 and $6 quarterly dues; the membership being limited to men over 21 years of age. A member desiring liquor would sign a numbered order addressed to a liquor house without the state directing shipment to him of the liquor required in care of the club, paying the club at the time the purchase price, which it deposited in its bank account; its check being sent to the wholesale liquor seller in payment. The liquor, when received, was placed in the club's refrigerators; the bottles being mingled with those of other members, and furnished to the member owning the same on coupon orders bearing the same number as the order on which the shipment was procured until all the liquor so ordered was exhausted, the club making no profit on the transaction, its manager being paid a salary derived from dues, etc. Held, that the furnishing of the liquor to the members under such method was not a sale by the club to the member, the club being a mere gratuitous bailee of the liquor while in its possession, and hence such transaction did not constitute a violation of Pub.Laws, Ex.Sess. 1908, c. 71, prohibiting sales of liquor for gain within the state."

Many distinguishing factors can be pointed out between that case and the instant case now before us. The Colonial Club case arose under a state statute, forbidding all sales of liquor, and not under the Emergency Price Control Act. And the Club and its members, unlike Weymann, at least clothed the transaction with the external indicia of a sale by the liquor dealer directly to the club members. The liquor was paid for in advance; the Club derived no profit from the transaction; no persuasion or influence was necessary on the part of the Club to effect the sale. Whereas, in our case, the charge of $500 a carload was paid to Weymann, because he could procure the oranges, while Freeman and Chezik were apparently helpless as potential orange buyers, without Weymann's assistance.

In arriving at our conclusion, we have duly considered the doctrines that penal statutes must be construed strictly and that the criminal liability of Weymann must be proved beyond a reasonable doubt.

We, therefore, affirm the judgment of the District Court.

Affirmed.